HERMAN B. FERGUSON, Respondent, v. RAYMOND H. CHUCK et al., Appellants.

Sale — contract — default in payment — Personal Property Law relating thereto — when thirty days' default in payment without justifiable excuse entitled the sellers to cancel the contract.

1. A failure for thirty days to pay, when due, a substantial sum for an installment of goods, purchased under a written contract for a large amount to be delivered in installments and paid for as specified in the contract, if willful and inexcusable is such a breach of the buyer's obligation as authorized the sellers to refuse to go further forward with the contract. (Pers. Prop. Law, § 126.)

2. The fact that the buyer's factory was destroyed by fire after the delivery of the installment in question and just before payment

therefor became due, is no excuse when two weeks elapse between the fire and the date when his indebtedness to the sellers became due, and during all of this time he had access to his books showing the amount and due date of the indebtedness and in addition to this fact had his attention called to his failure to pay by statements of account, by demands for payment and by bank drafts drawn on him for the amount due which were returned for trivial and evasive reasons. The evidence sustains the inference that the default was willful and important to the sellers and that under such conditions the buyer had no right to insist that the sellers should overlook it and go on with the contract.

*Ferguson* v. *Chuck*, 204 App. Div. 876, reversed.

(Argued May 2, 1923; decided May 29, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 4, 1923, affirming a judgment in favor of plaintiff entered upon a verdict.

*Clarence J. Shearn* and *Arthur L. Davis* for appellants. An unexcused default in payment for a period of thirty-one days constitutes breach of contract so material as to justify the injured party as a matter of law in refusing to proceed further. (*Helgar Corp.* v. *Warner's Features*, 222 N. Y. 449; *Heller & Bro.* v. *Continental Mills*, 196 App. Div. 7; *Marrone* v. *Engel*, 171 N. Y. Supp. 47; *Alden Coal Mining Co.* v. *Amos Coal Co.*, 192 App. Div. 371; *Eastern Forge Co.* v. *Corbin*, 182 Mass. 590.)

*Joseph Force Crater, Joseph P. Segal* and *I. Gainsburg* for respondent. Respondent's default was excusable under the circumstances shown, and did not, as a matter of law, justify appellants' attempted rescission. (*Helgar Corp.* v. *Warner's Features*, 222 N. Y. 449; *Callanan* v. *Keeseville, etc., Ry. Co.*, 199 N. Y. 268; *Babbit* v. *Gibbs*, 150 N. Y. 281; *Raftery* v. *World Film Corp.*, 180 App. Div. 475; *Harding, Whitman Co.* v. *York Knitting Mills*, 142 Fed. Rep. 228.) Appellants could not, as a matter of law, rescind the contract at a time when plaintiff was not in default, nor without previous notice. (*Impe-*

*rator Realty Co. v. Tull,* 228 N. Y. 447; *Pipe, etc., Supply Co. v. Mason & Houger Co.,* 181 App. Div. 317; *Taylor v. Goelet,* 208 N. Y. 253; *Brede v. Rosedale Terrace Co.,* 216 N. Y. 246.)

HISCOCK, Ch. J. The plaintiff brought this action to recover damages alleged to have been caused by the failure of defendants to deliver goods under a contract of sale. The defense is that the defendants were justified in annulling their contract and in refusing to deliver the goods in question by the willful and inexcusable delay of the plaintiff in paying $1,298.60 for a prior installment of goods which had been delivered under the same contract.

The plaintiff was a manufacturer of shirts, having his factory at McKeesport, Pa. Defendants were converters of cotton goods, having their offices in New York city. In November, 1917, the parties entered into a written contract which provided for the sale and delivery by the defendants to the plaintiff of about 75,000 yards of merchandise in convenient installments during April and May, 1918. The contract contained the following provisions:

" Partial deliveries to be paid for at contract rates upon maturity of bills therefor.

" This order is given and accepted subject to a limit of credit determinable at any time by Chuck, Davis & Co. (the defendants).

" The acceptance by railroad or other carrier shall constitute delivery."

In accordance with the contract defendants shipped to plaintiff three installments of goods before the one which has led to this controversy. The latter shipment was made under an invoice dated April 8, 1918, and concededly the bill therefor became due June 17, 1918. Under the clause in the contract which has been quoted defendants prior to said last date had insisted that

plaintiff's line of credit should be reduced to $4,000 and after some correspondence this seems to have been agreed to. Nevertheless the plaintiff was somewhat delinquent in paying bills for invoices of goods shipped before the one in question.

The payment for the installment of goods under consideration not being paid on June 17 when it became due defendants drew upon plaintiff two drafts for the amount. The first one was drawn June 21st through a bank used by plaintiff at Wheeling, West Virginia, but payment was refused on the ground that plaintiff did not pay his drafts. at that bank. The second draft, drawn June 26th upon and through a different bank and of which plaintiff was specially notified by letter, was returned unpaid and without the assignment of any reason for such non-payment so far as appears. Still later the bill remaining unpaid was placed in the hands of a collecting agency and finally payment thereof was obtained or forced 30 or 31 days after it became due. After payment had thus been obtained defendants notified plaintiff that they would deliver no more goods under the contract.

On this appeal the plaintiff urges as a reason and sufficient excuse for his non-payment of defendants' bill that his factory was destroyed by fire on June 3d and his affairs thrown into such confusion as excused his default in payment for the period mentioned. Concededly the plaintiff's factory was destroyed by fire on the date mentioned but so far as concerns defendants' bill for their goods it appears that plaintiff's books were saved which showed a credit to defendants for the installment in question and the date when due; that long before the fire plaintiff received duplicate bills of lading which showed that the goods had been delivered to the Pennsylvania Railroad Company which, under the contract, made a good delivery to him; that on June 21st he made numerous proofs of loss by the fire in

question which showed that he had received one package
of the goods in question and that the other was still in
transit. He claims to have sent out a circular letter
after the fire notifying creditors of the fire and asking
for duplicate invoices, and receipt of which by the defend-
ants is denied. He did, however, write a letter on June
7th referring to the fire and expressing an intention to
take up with defendants other payments about which
they had written, and subsequently and on June 17th he
did make payment for two other installments of goods,
apparently relying upon the same ledger which contained
the credit for the installment in question.

Out of these facts under the issues framed by the
pleadings two decisive questions emerge. The first is
the one whether a failure for thirty days to pay when due
a substantial sum for an installment of goods, if willful
and inexcusable, was such a breach of plaintiff's obliga-
tions as authorized the defendants to refuse to go farther
forward with the contract. The second is the one whether
the facts of this case did furnish such a justification for
plaintiff's default as cleansed it of inexcusable character-
istics and put defendants rather than him in the wrong.
We think that both of these questions as matter of law
must be answered unfavorably to the plaintiff.

The payment due from plaintiff to defendants was a
substantial one of several hundred dollars and unques-
tionably due on a definite date. It had been fixed by
the parties with all of the formalities of a written contract
and if, as we are now assuming, the plaintiff for a month
without excuse or reason ignored his obligation, we do
not think that a jury should be permitted to say that
such a failure was one of those inconsequential slips or
inadvertent defaults which ought to be overlooked in
the interest of reasonable and fair mercantile dealings.
It is not a matter of bare facts; motives are of consequence
and if it be the truth that this default was the result of
deliberate purpose or of careless indifference we feel

entirely clear that the other party to the contract had a right to decline further to deal with a person thus disregarding his obligations. Therefore, the question becomes one for careful scrutiny whether there was justification or excuse, because it is obvious that in almost every case the character of the default is to be decided by the peculiar circumstances of that case. (Personal Property Law [Cons. Laws, ch. 41], sec. 126.)

As stated, the plaintiff seeks to find the excuse for his shortcomings in the fire which destroyed his factory, but while a general and superficial view of that event and its consequences seems to sustain this excuse that view does not survive when we substitute a careful analysis of the facts for generalities.

Several weeks elapsed between the shipment of the goods of which plaintiff was assured by bills of lading and the fire. Two weeks elapsed between the fire and the date when his indebtedness to defendants became due and during substantially all of this time he had access to his books showing the amount and due date of the indebtedness. By his proofs of fire loss filed four days after this due date he in effect acknowledged receipt of one case of goods and described the other as still in transit. Thus so far as we can see he was amply advised of and fully understood his obligations. He was not left uninformed of defendants' desire that those obligations should be met. The prior correspondence requesting under the provisions of the contract a curtailment of his indebtedness and the two drafts drawn for this installment, one of them reinforced by special notice that it was being drawn, were not mere colorless hints that defendants would be gratified by the payment of their claim. Added to the contractual due date of that indebtedness they were very forceful signs that payment was important to defendants and imperative demands that plaintiff should meet his obligations. They left no opportunity for inadvertent oversight or anticipated

indulgence. They certainly made it incumbent on plaintiff as a matter of prudence and fairness at the time to urge upon defendants the consideration of any good excuse for his delay. It casts a significant light upon his present excuses that he did not do this. If we assume upon the pretty unsatisfactory evidence that defendants, although denying it, did receive a copy of his circular letter sent out June 7th after the fire asking his creditors for duplicate invoices, they were entitled to conclude when on June 17th in response to a dunning letter he paid two other invoices that he was quite supplied with the means of determining what he owed and when due, and this view was reinforced by the fact that the excuse for the failure to pay the first dishonored draft was simply and solely that plaintiff did not pay drafts through that bank. So, we are convinced that there was no adequate excuse actually existent, or at the time claimed for plaintiff's default in payment of this installment; that the default was substantial and willful and important to the defendants and that under such conditions plaintiff had no right to insist that defendants should overlook it and go on with the contract. (*Helgar Corp.* v. *Warner's Features, Inc.,* 222 N. Y. 449.)

Of course there is nothing to the point somewhat referred to, although scarcely argued, that defendants canceled this contract after they had collected this installment. The installment was due to them and they certainly had a right to collect and receive it. Such acceptance of their due was in no manner a waiver of or inconsistent with a refusal further to deal with the plaintiff.

For the reasons stated we think that the judgments should be reversed and the complaint dismissed, with costs in all courts.

HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur; McLAUGHLIN and CRANE, JJ., dissent.

Judgments reversed, etc.