JOANNES BROTHERS COMPANY, Plaintiff, *v.* CZARNIKOW-RIONDA COMPANY, Defendant.

Supreme Court, New York Special Term, September, 1923.

Sales — delivery of unmarketable sugar — right of buyer to rescind — acceptance without knowledge of breach of warranty — reasonable time within which to rescind — evidence — custom of trade — measure of damages — Personal Property Law, § 150.

The presumption that a condition once known to exist continues does not work backwards.

In 1920 the plaintiff agreed to purchase from the defendant 3,000 bags of granulated sugar. The Federal Sugar Refining Company sold sugar to defendant to comply with its contract with plaintiff and in August of that year shipped to plaintiff 2,991 bags of sugar. Upon receipt of the same they were stored in plaintiff's warehouse and it was only about October 5, 1920, after some of the sugar had been sold by plaintiff, shipped and returned by the purchaser with a complaint that it was not up to standard, that plaintiff made any examination and thereupon discovered the defects in the sugar. On October 26, 1920, plaintiff gave notice to defendant that it rescinded the contract upon the ground that the sugar was defective. *Held*, that although the sugar produced upon the trial of an action to recover the money paid on the contract and for a rescission thereof was not merchantable as fine granulated sugar, defendant had complied with its contract if it shipped sugar which was merchantable, as it was possible that its present condition was due to deterioration in transit or while in defendant's warehouse either before or after examination.

Accepting as true the testimony of plaintiff that the sugar was in substantially the same condition when examined in October, 1920, as when produced on the trial, the fact as to its condition at any time prior to such examination must in the absence of direct testimony on the point be resolved upon circumstantial evidence.

The question of whether the sugar was in poor condition when shipped must be decided without the aid of any presumption either way, and the burden of showing that its condition when examined did not occur through deterioration after shipment was upon the plaintiff, and it having been shown by undisputed evidence that plaintiff stored the sugar after its receipt in a properly constructed warehouse in a proper manner, it follows that the sugar arrived at its destination in a defective condition and must have been in poor condition unless it deteriorated while under the control of the carrier.

The sugar, which concededly could have deteriorated while in the control of the carrier only by becoming wet, was shipped on two separate days but by two different routes and on August 28, August 29, August 30, and September 7, 1920, arrived at Green Bay, Wis., where plaintiff was doing business. *Held*, that in spite of the refining company's system of inspection the sugar must have been shipped in poor condition and under section 150 of the Personal Property Law plaintiff had the right to rescind the contract for breach of warranty.

The plaintiff established that there was a custom in Wisconsin where the contract was made that wholesalers and jobbers received refined sugar from reputable refiners in the original containers and resold the sugar in turn without inspection and examination and the same custom was shown to exist in New York. *Held*,

that it was fair to assume that both parties had knowledge of this custom and that their rights should be determined with due regard thereto.

While such custom was insufficient to prevent the retention and sale of the sugar from constituting an acceptance thereof, still under the custom proved the acceptance was made without knowledge, actual or constructive, of the breach of warranty, and the plaintiff under section 150(3) of the Personal Property Law had a right to rescind the contract upon notice to the defendant within a reasonable time of its election to rescind.

While the question whether notice of election to rescind has been given within a reasonable time depends upon all the circumstances, the court in determining that question must, so far as possible, look at the matter from the point of view of the party and must require of each fair dealing towards the other, and the mere fact that the letter in which plaintiff complained about the sugar did not state that plaintiff elected to rescind was not a bar to the relief asked, it having been established to the satisfaction of the court that plaintiff's entire course of conduct since the letter was sent was such as a business man would naturally and fairly pursue, the plaintiff will be granted a judgment for the rescission of the contract and for the money paid thereon as well as the expense to which it had been put while holding the sugar for defendant, but neither the expense of storage nor that of opening a letter of credit is to be included in the judgment.

A rule of law which would require business men to proceed in all cases upon the assumption that as soon as they discover a breach of warranty they must lay the basis for an action for rescission or damages and either assert or waive their technical legal rights would be contrary to common sense and public policy and would merely foster litigation.

ACTION to recover moneys paid and expenses on rescission of contract.

*Davies, Auerbach & Cornell (George T. Hogg* and *Martin, Martin & Martin,* of counsel), for plaintiff.

*Shattuck, Glenn & Ganter (Garrard Glenn, William B. Walsh* and *DeWitt C. Jones, Jr.,* of counsel), for defendant.

LEHMAN, J.  In 1920 the plaintiff agreed to purchase from the defendant 3,000 bags of fine granulated sugar.  The defendant purchased sugar from the Federal Sugar Refining Company to comply with its contracts with the plaintiff.  In August, 1920, the Federal Sugar Refining Company shipped to the plaintiff 2,991 bags of sugar and the shipments arrived at Green Bay, Wis., the place where plaintiff was doing business, on August twenty-eighth, August twenty-ninth, August thirtieth and September seventh.  On October 26, 1920, the plaintiff gave notice to the defendant that it rescinded the contract on the ground that the sugar was defective and it now brings this action to recover the money paid for the sugar and expenses incurred upon a rescission of the contract.  The case presents a question of fact — whether the sugar delivered was in fact fine granulated sugar; and a question of law or at least of mixed fact and law — whether the plaintiff notified the defendant

within a reasonable time of the election to rescind in accordance with section 150 of the Personal Property Law.

Upon the receipt of the sugar the plaintiff stored it in its warehouse. Only about October fifth, after some of the sugar had been sold by the plaintiff, shipped and returned by the purchaser with a complaint that the sugar was not up to standard, did the plaintiff make any examination and upon such examination discover the alleged defects in the sugar. The sugar which was produced at the trial was undoubtedly not merchantable as fine granulated sugar, but the defendant has complied with its contract, if it shipped sugar which was merchantable, and it is possible that the present condition of the sugar is due to deterioration in transit or while in the warehouse of the plaintiff, either before or after the examination. If the plaintiff's testimony is true the sugar was in substantially the same condition when it was examined in October, 1920, as when produced at the trial, and I have no hesitation in finding this testimony to be true, but there is no direct testimony as to the condition of the sugar at any time prior thereto. The question of fact in the case must, therefore, be resolved on circumstantial evidence. It is urged by the plaintiff that there is a presumption that the condition in which the sugar was found to be on October fifth was the same as when shipped in August and it relies for authority for this proposition upon the cases of *Platt* v. *Gross*, 92 N. Y. Supp. 249, and *Crowell Bros.* v. *Panhandle Grain & Elevator Co.*, 271 Fed. Rep. 129. There are expressions in the opinions in those cases which standing alone might give force to the plaintiff's contention, but I am convinced that the courts in those cases did not assume or decide that the rule, that a condition once shown to exist is presumed in the absence of evidence to the contrary to continue, may also be applied to create a presumption backwards. The rule that such a presumption does not work backwards is too well established in both reason and authority to require any careful consideration now. A condition which naturally remains unchanged unless new forces operate upon it may logically be presumed to remain unchanged until some evidence is produced to show that these forces did come into operation, but there can be no presumption that any of the forces which must have operated to produce a given condition came into play at a particular time. There can logically be no general presumption that a condition now existent also existed at any particular previous time, but circumstances may exist in any case which themselves may negative the possibility or probability that these forces came into existence after a particular time, and in my opinion when the courts in the cases relied upon used the term " presumption " they referred to

such special circumstances. In the case of *Platt* v. *Gross, supra,* the goods when examined were uninjured and in good condition and obviously from these facts it may logically be inferred that the goods had not been exposed to any force which could have altered their previous condition, and in the case of *Crowell* v. *Panhandle Grain & Elevator Co., supra,* the court merely stated: " There was no error in the reception of the testimony of the witness Hunter to the character of the cane seed in September, 1918. The presumption was that the mixture was of the same nature at that time as when delivered to the Panhandle Company." There must, of course, have been evidence that the cane seed examined in September, 1918, was the same cane seed as was delivered to the Panhandle Company, and if that was the case there could be practically no doubt that the *nature* of the cane seed could not have changed in the meanwhile. I must, therefore, in the present case decide whether the sugar was in poor condition when shipped without the aid of any presumption either way, and the plaintiff has the burden of showing that its condition when examined did not occur through deterioration after shipment.

The defendant has shown that the Federal Sugar Refining Company used a system of inspection during the process of refining which, so far as human ingenuity could provide against human error, insured the shipment of sugar of the proper grade. Like all human systems it may prove fallible, but in my opinion the probability is against its proving fallible in any given case, yet a careful consideration of the evidence has led me to believe that the improbable has occurred in this case. The evidence is undisputed that the plaintiff stored the sugar after its receipt in a properly constructed warehouse in a proper manner, and it would seem that if the deterioration had occurred in handling the sugar after its receipt by improper handling, the defendant could have controverted this evidence. I have, therefore, without much hesitation arrived at the conclusion that the sugar arrived in Green Bay in a defective condition. If that is the case the sugar must have been shipped in poor condition unless it deteriorated while in the control of the carrier.

The sugar concededly could have deteriorated while in the control of the carrier only by becoming wet. All of the cars which contained the sugar were found on arrival to be in good order and properly closed and sealed and the bags of sugar were stowed and piled in said cars in a good and proper manner. The sugar was shipped on two separate days by two different routes and arrived on four separate days. Strange coincidences may at times occur, but it seems to me to be beyond the range of probability that shipments arriving on four different days by two different routes

in outwardly good condition should all have been exposed to rain and wet. If the sugar arrived in poor condition then in spite of the refining company's system of inspection it almost certainly must have been shipped in poor condition. For these reasons I feel constrained to hold that under section 150 of the Personal Property Law the plaintiff had the right to rescind the contract for breach of warranty.

The question still remains, however, whether the plaintiff exercised this right within a reasonable time. The notice of rescission was given on October twenty-sixth. The breach of warranty was discovered on October fifth and for four weeks prior thereto the plaintiff had opportunity to inspect the sugar but failed to make use of such right. It is clear that ordinarily a notice of rescission given three weeks after discovery of the defect would not be within a reasonable time and that the retention of the sugar without examination for four weeks after plaintiff had a reasonable opportunity to examine it would constitute an acceptance under section 128 of the Personal Property Law. The question of what constitutes a reasonable time depends, however, in each case upon the circumstances surrounding the transaction, and it is claimed by the plaintiff that under the peculiar circumstances of this case the notice was given within the proper time.

The plaintiff has established that there was a custom in Wisconsin where the contract was made that wholesalers and jobbers received refined sugar from reputable refiners in the original containers and resold the sugar in turn without inspecting and examining it. The same custom was shown to exist in New York city, and it is fair to assume that both the plaintiff and the defendant had knowledge of this custom, and the rights of the parties should be determined with due regard for such custom. Section 152 of the Personal Property Law provides that " Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived, or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale." That section of the statute is in my opinion in nowise contrary to the classic opinions of Mr. Justice Story in *Donnell* v. *Columbian Ins. Co.*, 2 Sumn. 366, Fed. Case No. 3987; and in *The Reeside*, 2 Sumn. 567, Fed. Case No. 11657, in which that learned jurist pointed out the danger involved when proof of usages and customs is permitted to outweigh the well-known and well-established principles of law. On the contrary, it seems to me to be a statutory recognition of the proper function of such usages and customs as laid down in the opinion in *The Reeside, supra:* " The true and

appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character." The rights and obligations of parties to a sale or contract of sale are not given or imposed by the statute but depend upon the agreement of the parties, and only where question arises as to the true intent of the parties or the contract is silent as to particular rights or obligations, does the law step in with rules whereby the intention of the parties may be determined or rights and obligations implied. These rules of law are usually derived from usages and customs which are so general that they have attained the dignity of recognized law, but they lose their significance where special circumstances exist from which the court can properly presume that the parties intended otherwise. In the absence of custom the plaintiff would be deemed to have accepted the sugar when it proceeded to store and sell it without examination, but obviously the parties could agree that such acts should not constitute an acceptance, and if the contract, read in the light of the proved custom, shows that such was in fact their intent, the law will give this intent its proper effect, and even if I hold that in the present case the custom as proved is insufficient to negative the rule ordinarily implied in the law that retention and *a fortiori* sale of goods after the purchaser had reasonable opportunity to examine, constitute an acceptance of the sugar, yet I must still determine whether under the law the purchaser could not, in spite of such acceptance, rescind the sale or contract of sale and revest title in the seller. Ordinarily a purchaser having the opportunity to examine goods, foregoes that opportunity at his peril and if by such examination he would have discovered existing defects, then the court may properly say the purchaser " ought " to have known of the defects and he cannot rescind the sale thereafter, but subdivision 3 of section 150 of the Personal Property Law recognizes a right to rescind even after the buyer has accepted the goods if at the time of such acceptance he did not know of the breach of warranty and if he notified the seller within a reasonable time of the election to rescind.

I am unwilling on the present case to hold that the custom as proven was sufficient to prevent the retention and resale of the sugar from constituting an acceptance of the goods, but it seems to me that under the custom the acceptance was made without knowledge, actual or constructive, of the breach of warranty.

It is urged that the so-called custom means nothing more than that the dealer was accustomed to rely upon the reputation of the

seller and if the seller thereafter chose to waive failure to give prompt notice this constituted a favor on his part and created no obligation against him. Such a construction of the effect of the custom even though it was merely a custom to rely on the name and reputation of the seller is too narrow; for the usual implication that would ordinarily arise that a buyer accepts goods with all their defects as a compliance with the contract of sale if he retains or disposes of them without protest after he has had opportunity to examine them, is negatived by any custom from which it would appear that in the ordinary course of his business the acceptance was made without knowledge of the defects. In this respect it is significant that the statute provides that any right, duty or liability may be negatived not only by general custom but by the " course of dealing between the parties " which, in my opinion, can only mean that in general where there are circumstances which to the knowledge, actual or constructive, of both parties negatives a right or liability ordinarily implied by law, the court will give effect to the intent of the parties and not to arbitrary rules of law. Nor am I impressed with the contention that since under the custom the buyer might not make such examination for an unlimited time, the custom is unreasonable and allows him to speculate at the expense of the seller. Of course there can be no speculation at the expense of the seller if the seller has complied with the contract, nor can there be any speculation after actual discovery of the defect, for then the duty of prompt notice arises, and the mere fact that under the custom as proven the time for examination might be very long does not in my opinion necessarily lead to the result that the right to rescind also remains in existence for an unlimited time if no examination is in fact made. In each case the question is whether the acts of the buyer show an unconditional acceptance with all defects known or unknown, and if a buyer fails to sell the goods within a reasonable time, then in spite of the custom the court might well hold that continued failure to examine might itself constitute a waiver. It seems to me that the law cannot be too firm in insisting upon fair dealing between business men and their performance of all duties and obligations which they have assumed, but it should not impose upon parties to a contract obligations not created by the contract nor required by fair dealing. Neither the contract nor the course of fair dealing between these parties required the plaintiff to examine the sugar to discover possible defects until the time for such examination came in the ordinary course of business. Under the custom prevailing in that business in the place where the contract was made and where the plaintiff lived, the time for examination ordinarily came only after

complaint was made to a dealer by one who purchased sugar from the dealer. The plaintiff, a dealer, resold within a reasonable time and examination was made promptly after complaint, and if the dealer's acts constituted an acceptance of the sugar before that time it was an acceptance without knowledge, actual or constructive, of the defects and, therefore, his right to rescind was still alive, if he then notified the seller within a reasonable time of his election to rescind.

The most serious doubt in my mind is whether the plaintiff did give such notice within a reasonable time. It concededly notified the defendant promptly of the defects in the sugar, but that notice constituted no rescission though it might pave the way to an action for breach of warranty. No answer was received to this letter and nothing was done for two weeks when an officer of plaintiff corporation proceeded to New York to see the defendant. Discussions then ensued about the matter and at the end of the negotiations, three weeks after the discovery of the defect, the first actual notice of election to rescind was given. In the meanwhile the price of sugar had dropped. The question of whether a notice of election to rescind has been given within a reasonable time depends upon all the circumstances of the case and in determining that question the court must, so far as possible, look at the matter from the point of view of the parties and must require of each fair dealing towards the other. The buyer must not be permitted to speculate as to whether an election to rescind is more profitable than an election to accept the goods and, especially, where there has been a fall in the price of goods, the buyer should not be permitted to place this loss upon the seller through any failure to make the election earlier. On the other hand, the mere fact that the letter which the plaintiff sent to the defendant, in which it complained about the sugar as soon as the examination was made, contained no statement that the plaintiff elected to rescind, should not be held to bar the plaintiff if the plaintiff's entire course of conduct was such as a business man would naturally and fairly pursue. Ordinarily a business man discovering defects in goods supplied by a reputable dealer does not assume that he will be obliged to resort to legal proceedings to protect his rights nor does he consult his lawyer as to the form of letter he will write, but merely sends the dealer a complaint and then waits a reasonable time to learn what the dealer will do to remedy the trouble. This in my opinion is exactly what the plaintiff has done in the present case for, not hearing from the defendant within two weeks, he proceeded to New York to discuss the matter in person. When these discussions failed to result in

**31**

an adjustment he promptly consulted his attorney and the notice of rescission followed and the consequent delay seems to have been due rather to the failure of the defendant to take any position in answer to the plaintiff's original communication. It seems to me entirely clear that a rule of law which would require business men to proceed in all cases upon the assumption that as soon as they discover a breach of warranty they must lay the basis for an action for rescission or damages and either assert or waive their technical legal rights would be contrary to common sense and public policy and would merely foster litigation. The time to assert a legal right arises only when the need for its assertion reasonably appears and that time did not arise in this case until the plaintiff had reason to believe that the defendant would not voluntarily offer an adjustment for its breach of warranty.

For these reasons I have determined that the plaintiff has rescinded the contract of sale and can recover the price paid thereon as well as the expenses to which the plaintiff has been put while holding the goods for the defendant. I have not, however, found any authority for the inclusion of expenses for storage where the buyer itself stored the goods nor for the expense of opening a letter of credit. Findings passed upon and signed. Submit complete decision and judgment.

Judgment accordingly.