A. S. Rosenthal Company, Respondent, *v.* The Brilliant Silk Mfg. Co., Inc., Appellant.

First Department, July 6, 1926.

Sales — action by buyer for breach of contract — verdict directed for plaintiff — question of fact whether defendant was justified in refusing to continue with contract — defendant did not waive right to consider contract broken by plaintiff by accepting amount due on first installment — plaintiff did not show as matter of law that it was free from fault.

In an action by a buyer to recover damages for breach of contract for the sale of cloth, it was error for the court to direct a verdict in favor of the plaintiff, since the evidence raised a question of fact whether the defendant was justified in refusing to continue with the contract and in considering the contract as having been broken by the plaintiff.

The acts of the defendant in accepting the amount due on the first installment of goods, after it had declared the contract broken, did not amount to a waiver of its right to insist that the plaintiff had breached the contract.

The plaintiff did not show as a matter of law that it was free from fault, and, therefore, it was for the jury to determine that question.

Merrell, J., dissents.

Appeal by the defendant, The Brilliant Silk Mfg. Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of March, 1924, upon the verdict of a jury rendered by direction of the court, with the damages assessed by the jury.

*William O. Gennert* of counsel [*Butcher, Tanner & Foster* with him on the brief; *Walter Fairchild,* attorney], for the appellant.

*Harold R. Medina* of counsel [*I. Gainsburg* and *Leander I. Shelley* with him on the brief; *Siegfried F. Hartman,* attorney], for the respondent.

Martin, J.    The defendant, appellant, entered into a contract with plaintiff on the 20th day of March, 1919, for the sale of 300 pieces quality " A-36 " Warp Print Taffetas at one dollar and fifty cents a yard.    The contract provides with reference to quality of goods and deliveries as follows:

" To be of good material and made as carefully as if made for ourselves, with the *understanding* that if goods are merchantable they will be accepted and no claims made for unavoidable imperfections.    * * *

" An effort is to be made to deliver, if possible, all or the principal part of this order by or before Nov. 30th, 1919, with the hope and expectation that additional orders will be placed in time to

keep the looms running continuously and through 1920. * * * "
(Italics are the writer's.)

There was evidence which might have warranted a finding that defendant proceeded with reasonable dispatch to manufacture the goods and that there was delay due to strikes, to tardiness on the part of plaintiff in furnishing required information, and to the fact, in contemplation of the parties when the contract was made, that the whole undertaking was somewhat of an experiment.

The first delivery was made July 10, 1919, and the last December 29, 1919. Fourteen pieces were delivered in July; thirteen pieces in August; twenty-three pieces in September; thirty-six pieces in October; nine pieces in November, and two in December, one of which was a remnant. A total of ninety-six pieces constituted the deliveries made. At the end of August, 1919, there began to arise disputes as to deliveries. Finally defendant wrote on September 3, 1919: " We sent it [the order] to the mill in the regular way, and all delays have come from mill conditions over which we had no control. The writer mentioned some of these things as possible when we took the order, and it was understood that if we could not get the goods all out in 1919 they would be taken in 1920."

As to this defendant asserts acquiescence by plaintiff and that there was no further complaint or criticism of deliveries until December, 1919.

In the meantime, plaintiff had accepted delivery of all of the first set of ninety-six pieces and its detailed order for the second set of twenty-four warps or ninety-six pieces was given.

Notwithstanding the fact that the plaintiff had agreed to take the goods as manufactured, with no claims for unavoidable imperfections, providing the goods were merchantable, nevertheless in December, 1919, the plaintiff made claims for allowances with respect to twenty-two pieces of goods delivered up to that time. On December 17, 1919, defendant wrote: " We have examined the 22 pieces of Warp Print Taffetas sent back for our inspection. We are sorry to report that the principal part of the difficulty is from the weaving. We find it very difficult, and we might say practically impossible, to obtain competent weavers and department overseers to handle this class of goods at this time. When we took the order, we knew it might be slow to deliver the goods and so made no definite time for delivery. We realize that you cannot accept goods as perfect turned out in this condition, and it looks as though we could not do any better under present conditions. We have material in process now, but question the advisability of going ahead with it until we are able to do better work than at present."

A conference followed, and, though it was contended for defendant that plaintiff was required to accept the goods if merchantable without making any claim for unavoidable imperfections, a credit of $135.20 was made to and accepted by plaintiff.

The plaintiff then made further demands upon the defendant, which the defendant contends were unreasonable, that the Brilliant Silk Mfg. Co., Inc., should make immediate delivery of the remainder of the warp print taffetas called for by the contract. The defendant contends that this was impossible, plaintiff not even having furnished the filling instructions for color combinations of the second set of warps until October 16, 1919; and that, though the mill had immediately proceeded with the execution of the order for the second set of twenty-four warps, there were delays at the dyers and at the printers. The defendant also contended that it could not under the circumstances comply with a demand that it state definitely when the rest of the goods could be delivered. Indeed it seems that filling instructions for the third set of twenty-four warps had not been given by the plaintiff.

The plaintiff then demanded immediate delivery of plain taffetas. Prices had advanced and defendant was unwilling to deliver plain instead of warp print taffetas because it would have resulted in taking the plain taffetas being produced for other customers who were waiting for them.

The plaintiff then refused to make payments due for goods already delivered, amounting to $1,344.38. The defendant, however, proceeded with the twenty-four warps which had been fully ordered, and demanded the amount due.

As plaintiff insisted on immediate delivery or the fixation of a definite time for further delivery as a condition of paying the balance due for the merchandise which it had received, defendant took the position that plaintiff had breached the contract and, apparently, that as a consequence defendant would refuse to proceed on its part, writing as follows:

"*Feb.* 2, 1920.

" MESSRS. A. S. ROSENTHAL CO.,
        " 112 Madison Avenue,
               " New York City:

" GENTLEMEN — Your letter of January 30, 1920 addressed to Messrs. Rusch & Co. in which you refuse to pay your outstanding account which has been past due since January 10, 1920 has been called to our attention. This letter followed the call made by our representative Mr. Richter upon you at your office on January 30th at which time he demanded payment of the bill but payment was refused.

" Deliveries of goods have been made by us strictly according to contract. The attitude of your Mr. Frank Rosenthal has been unwarrantably offensive and the statements made by him in our office in the presence of others including our attorney were both false and unfair. They were so wrong that if they had been made in the presence of a customer instead of our attorney might have resulted in serious damage. The unfair and aggressive position you have taken, together with your refusal to pay for goods already delivered according to the terms of the agreement constitute a deliberate breach of the entire contract.

" On demand for payment you wrote in response on January 15th to Rusch & Co. stating that there was a dispute regarding quality and asked a day or two until your Mr. Frank Rosenthal returned to the city, although the fact is that we had concluded the adjustment referred to with Mr. Rosenthal on December 23, 1919, and credit for same had been passed to you on December 26, 1919.

" We have already notified you that at the time you requested to change your order to plain goods, which request you made on December 23, 1919, we had in process 24 warps of the approximate value somewhere between $6000 and $8000 including the labor cost to that time. We hold you liable for any damages resulting from your breach of contract.

" Also we must now ask you to pay immediately the balance of your account outstanding including all deliveries to date, for which we have instructed Rusch & Company to send you statement.

" Yours truly,
" THE BRILLIANT SILK MFG. CO., INC.
" Per J. B. WHITNEY,
" *Manager.*"

Prior to the date of this letter, representatives of plaintiff had ascribed differing reasons for contending that defendant's position was such that plaintiff was entitled to compliance with plaintiff's demands as a condition of payment for the goods it had received. Though plaintiff had accepted deliveries as they were made, it had not fixed a reasonable time for further deliveries, in order to put the defendant in default.

Under the circumstances, we believe that the most unfavorable view that could possibly be taken for defendant was that on the record a question of fact existed as to whether the situation was such as would justify a refusal by defendant to proceed further.

The plaintiff evidently concluded after receiving legal advice that it had taken an unsupportable position, and changed its tactics. A check was sent out but for an amount less than the sum due.

Eventually another check was sent to defendant's agents, which was also insufficient. Finally a third check for the full amount was sent and paid.

We do not believe that defendant waived its rights by accepting what was due to it. In *Ferguson* v. *Chuck* (236 N. Y. 149) the court said: " Of course there is nothing to the point somewhat referred to, although scarcely argued, that defendants canceled this contract after they had collected this installment. The installment was due to them and they certainly had a right to collect and receive it. Such acceptance of their due was in no manner a waiver of or inconsistent with a refusal further to deal with the plaintiff."

Each side contended that the other breached the contract. The plaintiff had refused to pay for deliveries it had received, and placed its refusal upon the ground that the defendant was in default in making deliveries.

It seems to us that it cannot be said as a matter of law that plaintiff has made out a case within the principle that a party who seeks to recover damages from the other party to the contract for its breach must show that he himself is free from fault in respect of performance.

It was pointed out in *Helgar Corp.* v. *Warner's Features* (222 N. Y. 449) that default in respect of one installment, though falling short of repudiation, may under some conditions be so material as to justify the other side in refusing to proceed. Under other conditions the default may be a mere technical omission to observe the letter of a promise. (*National Machine & Tool Co.* v. *Standard S. M. Co.*, 181 Mass. 275, 279.)

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., and FINCH, J., concur; MERRELL, J., dissents.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.