## CZARNIKOW-RIONDA CO. v. WEST MARKET GROCERY CO.

Circuit Court of Appeals, Second Circuit.
August 1, 1927.

No. 364.

1. Sales ⟨⟩181(12)—In action to recover money paid for sugar, proof held sufficient to support finding that sugar at time of shipment was not of quality contract required.

In action to recover money paid on sugar purchase contract, proof *held* sufficient to support finding that the sugar, at time of shipment to plaintiff, was not of the quality required by the contract.

2. Trial ⟨⟩89—Expert's error in sucrose formula was matter of credibility, not competency; hence motion to strike testimony was properly denied.

In action to recover money paid for a shipment of sugar, food chemist's erroneous recollection of sucrose formula went to the credibility, rather than the competency, of his testimony; hence motion to strike out his testimony was properly denied.

3. Sales ⟨⟩180(1)—Statute relative to rejection of goods applies to installment sales; hence acceptance of one installment does not preclude rejection of others (Personal Property Law N. Y. § 125).

Personal Property Law N. Y. (Consol. Laws. c. 41) § 125, relative to delivery, acceptance, and rejection of goods under sales contracts, applies to installment contracts, as well as to single mixed deliveries; hence acceptance of part of goods under installment contract does not preclude rejection of remainder.

4. Sales ⟨⟩62, 180(1)—Sugar sales contract held divisible; hence acceptance of one installment did not preclude rejection of remainder.

Where sugar sales contract contemplated a large total quantity to be shipped in installments as requested by the buyer, contract was divisible; hence delivery and acceptance of one installment did not preclude rejection of remainder.

In Error to the District Court of the United States for the Southern District of New York.

Action by the West Market Grocery Company (formerly known as the Sheppard Strassheim Company) against the Czarnikow-Rionda Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The parties will be referred to as plaintiff and defendant, in accordance with their relation to the litigation in the trial court.

The plaintiff was an Illinois corporation, engaged in business as a wholesale grocer in Chicago. The defendant was a New York corporation, engaged in the business of selling sugar. In April, 1920, the parties entered into a contract for the sale by defendant to plaintiff of a quantity of sugar described as

"4,200 bags, eastern cane fine granulated Federal Sugar Refining Company brand." The price was $17 net per bag of 100 pounds, and delivery was to be f. o. b. refinery, New York. Shipments were to be made at seller's option during August, 1920. The contract provided that the buyer should establish in New York an irrevocable letter of credit, to be drawn against by the seller upon presentation of bills of lading.

Some time prior to August 18, 1920, defendant shipped at plaintiff's request one carload of 600 bags of the sugar to a company in Dayton, Ohio, to which plaintiff had sold this quantity. Payment for this carload was obtained by defendant by draft drawn against the aforesaid letter of credit. The remainder of the sugar, 3,600 bags (except for the shortage of one bag, of which no point is made), was shipped by defendant in six carloads, delivered to the railroad on several dates between August 20 and 24. The bills of lading were made to the order of defendant as consignee, notify plaintiff. Drafts for $61,183, the aggregate price of the 3,599 bags, were drawn by defendant and paid under the letter of credit. The six carloads of sugar arrived at Depot Harbor, Ontario, at various times, and were there placed on one boat and transported to Chicago where they arrived September 9, 1920.

Upon being notified of their arrival, plaintiff promptly made inspection, samples being drawn from many bags, and determined that the sugar was not merchantable or marketable as a standard eastern cane fine granulated sugar. Thereupon plaintiff promptly notified defendant of its rejection of the sugar and offered to return it. Defendant refused its return, and it was sold by plaintiff at the best price obtainable. The proceeds, subject to deductions for expenses, were credited to defendant, leaving a balance of approximately $27,000, which plaintiff claimed to be due and owing on account of its payments of the drafts drawn against the letter of credit when the sugar was shipped. The plaintiff made no offer to return to defendant the 600 bags previously shipped to plaintiff's Ohio customer.

After demand for payment and refusal by defendant, this suit was brought; jurisdiction of the federal court resting upon diversity of citizenship. By stipulation a jury was waived and the issues referred to a referee, to hear evidence and report findings of fact and conclusions of law. The referee found in favor of the plaintiff. The District Court, without opinion, confirmed the report, and judgment was entered accordingly.

Glenn & Ganter, of New York City (Garrard Glenn and James F. Dealy, both of New York City, of counsel), for plaintiff in error.

Edwin M. Bohm, of New York City, and Ralph Merriam, of Chicago, Ill., for defendant in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The main question presented on this writ of error raises an interesting point of law, but before reaching it the sufficiency of the evidence to prove one essential fact must be considered. The defendant contends that the plaintiff entirely failed to prove that the sugar of which it complains was defective in quality when loaded on the cars at the refinery. The question is properly raised on this record, under the doctrine recently stated in Thompson-Starrett Co. v. La Belle Iron Works, 17 F.(2d) 536 (C. C. A. 2).

[1, 2] We are satisfied, however, that the proof is adequate to sustain the referee's finding that the 3,599 bags of sugar were not of the quality called for by the contract. There is overwhelming testimony that the sugar was off color and not up to standard at the time it reached Chicago. But the defendant contends that there is no proof it was in the same condition when delivered f. o. b. cars, except the testimony of the plaintiff's expert food chemist. This testimony defendant contends should have been stricken out, because the witness gave an erroneous answer to a question on cross-examination asking for the chemical composition of sucrose. This he corrected by letter to the referee before the close of the trial. The witness had had extensive training and long experience as a food chemist. He had acted as consulting chemist, and had rendered professional services for numerous sugar refineries and plantations. His erroneous recollection of the formula for sucrose goes to the credibility, rather than the competency, of his testimony. The referee was right in denying the motion to strike out his entire testimony. He testified that he tasted molasses in the samples of the sugar offered in evidence; that this indicated insufficient refining of the raw sugar and accounted for the off color of the sugar complained of.

Even without the expert's testimony, we think the referee's finding would have been justified. The sugar was not stained or off color in spots, but uniformly and throughout the whole mass of all the many bags sampled. It is common knowledge that standard fine granulated cane sugar remains white indefinitely, unless stained, spotted, or otherwise

operated upon by some external agent. The bags were clean, and showed no sign of wetting or damage. It is unbelievable that such uniformity of defect throughout the contents of so many bags could have occurred in transit, if the sugar was of standard quality when it left the refinery. See Joannes v. Czarnikow Rionda Co., 121 Misc. Rep. 474, 201 N. Y. S. 409, appealed 209 App. Div. 868, 205 N. Y. S. 930.

This brings us to the proposition upon which the defendant places chief reliance for reversal of the judgment, namely, that the plaintiff could not rescind its contract as to the 3,599 bags complained of without returning also the 600 bags previously shipped under the contract to plaintiff's customer in Ohio. Argument has been ably presented by learned counsel to the effect that the contract for 4,200 bags was an entire and indivisible contract; that the common law of New York requires a buyer under such a contract to rescind in toto, if at all; and that the Uniform Sales Act (Consol. Laws N. Y. c. 41, art. 5), which is embodied in the Personal Property Law of the state, has not changed the common-law doctrine.

The plaintiff meets this argument by referring to section 125 of the Personal Property Law (Consol. Laws, c. 41) and the decision of Portfolio v. Rubin, 233 N. Y. 439, 135 N. E. 843. In that case the buyer contracted to purchase four pieces of cloth suitable for manufacture into cloaks and suits. The price was at so much per yard. The seller delivered four pieces, of which the buyer rejected two, as nonconforming with the contract because shaded, and accepted two, tendering the computed price therefor. Suit was brought by the seller for the price of all four pieces. The Municipal Court decided that the contract was divisible, and that the defendant could reject the pieces which did not conform to the contract. The Appellate Term, holding that the contract was entire, and that the defendant in accepting part accepted all, reversed the judgment. The Appellate Division (196 App. Div. 316, 187 N. Y. S. 302) reinstated the judgment of the Municipal Court, but rested its reversal of the Appellate Term on a question of waiver and practice. On appeal to the Court of Appeals, the judgment for defendant was affirmed. Judge Crane, writing for the unanimous court, placed his opinion upon two grounds: (1) That the Personal Property Law had changed the common law of complete delivery; and (2) that the evidence sustained the conclusion of the Municipal Court that this was a divisible,

not an entire, contract. If the decision is applicable to the case at bar, either ground would justify the judgment of the trial court. [3] The defendant contends, however, that section 125 and the Portfolio decision relate only to a single mixed delivery, of which part conforms to the contract and part does not, and that the statute and the decision have no bearing upon a contract which contemplates delivery in installments. It must be conceded that the Portfolio Case involved only a single mixed delivery. But that a different result would have been reached, had the four pieces of cloth been delivered at different hours of the day, and the first two pieces been accepted before the two defective pieces arrived, seems to us most unlikely. No adequate reason can be advanced for permitting rejection of the defective goods in the one case, but not in the other.

[4] Section 125 was held applicable to an installment contract in Guaranty Trust Co. v. Gerseta Corporation, 212 App. Div. 76, 208 N. Y. S. 270. In fact, an installment contract, particularly where it is contemplated that a large total quantity shall be shipped at different times in carload lots, and to parties to whom the buyer may resell, as well as to the buyer himself, and that the seller shall draw drafts for the purchase price of each consignment as soon as shipped, seems to present a far stronger case for holding the contract divisible than did the facts in the Portfolio Case. That the doctrine there laid down should be so narrowly limited as to apply only to a single mixed delivery we cannot believe.

In this conclusion we are fortified by the English case of Jackson v. Rotax Motor Co., [1910] 2 K. B. 937. The sellers (plaintiffs) were manufacturers of motor horns, in Paris. The buyers (defendants) were dealers in motor accessories in London. The buyers ordered from the sellers some 600 motor horns of various descriptions and prices. The order provided: "Delivery as required, usual terms 2½ per cent. franco franco London." At the buyers' request the goods were delivered to a particular firm of carriers. They were delivered in 19 cases at various dates in May and June, 1909. The first installment of four cases was accepted by the buyers, who had resold the goods in one of the cases. The cases shipped in subsequent installments were rejected when inspection, on the arrival of the last consignment, disclosed that a large portion were defective. The sellers sued for the full purchase price. The buyers paid into court the sum due for the first four cases. The trial court held for the plaintiffs, allow-

ing a deduction to defendants for damages for the defective goods. In the Court of Appeals the judgment was reversed, all of the judges agreeing that the contract was divisible, and that acceptance of the first installment did not preclude rejection of the later defective installments. Cozens-Hardy, M. R., said:

"As a matter of construction of that order it seems to me that it clearly contemplated, not one entire contract for the sale at a lump price of an entire number of goods, but deliveries from time to time as required, with this result: That it is no answer to the buyers' claim to reject to say, 'You cannot reject the later deliveries, because you have accepted delivery of a prior installment which was up to the mark, and which you could not reject.'"

Similar reasoning appears in the concurring opinions of Farwell and Kennedy, L. JJ.; the latter saying:

"It seems to me impossible to say, from the way in which this transaction has been carried out by the parties, that it was intended to be treated as one entire contract, so that the acceptance of an earlier installment would preclude the buyers from rejecting a later installment. * * * In fact, I think the natural inference is that this transaction is to be treated, as stated by Farwell, L. J., on the footing of there being a separate contract for each delivery. It cannot matter whether the bales are large or small—the goods, of course, must come in some form of package—but I think it is part of the right of the buyer, if each consignment is to be treated as forming the subject of a separate contract, that all the goods comprised in that consignment should be of merchantable quality."

That interpretation of the contract seems to us equally applicable to the case at bar. The contract is divisible in the sense defined in the Portfolio Case; that is, the part to be performed by the seller consists of several distinct and separate items (installments), and the price to be paid by the buyer is apportioned to each item. See, also, Rubin v. Sturtevant, 80 F. 930 (C. C. A. 2); A. K. Young & Conant Mfg. Co. v. Wakefield, 121 Mass. 91; Holmes v. Gregg, 66 N. H. 621, 28 A. 17; Da Ponte v. Simonian (1923) 127 Wash. 214, 220 P. 799, 222 P. 901.

None of the later New York cases appear to us to be inconsistent with this view. While a contract for installment deliveries may be treated as an entire contract, when the issue is whether a failure by the seller or the buyer in respect to an early installment may be so material a breach of the contract as to justify the other party in refusing to perform in respect to later installments, as held in Bahnsen & Co. v. Gerst, 235 N. Y. 426, 139 N. E. 563, and Ferguson v. Chuck, 236 N. Y. 149, 140 N. E. 225, it does not necessarily follow that the contract is to be deemed entire when the issue is whether acceptance of an early installment precludes rejection of a later defective installment. Where this is the issue, we hold the contract before us divisible.

If the buyer is under no duty to accept and pay for a defective installment, it can hardly be doubted that, if he had paid for it in advance, he would have a right to recover such payment on the theory of failure of consideration. See Hill v. Rewee, 52 Mass. (11 Metc.) 268, 272; Da Ponte v. Simonian, supra.

It is urged that the plaintiff cannot recover its payment for the second installment without rescinding in toto and returning the 600 bags shipped to its Ohio customer. The argument is highly technical, for the seller is better off by retaining the contract price paid him for the 600 bags than he would be if they were returned and he were obliged to refund the price, which exceeded the market value, as found by the referee, at the date of the seller's default and continuously thereafter until September 18, 1920. Under such circumstances it may perhaps be doubted whether a rescinding buyer must return in kind the first installment, even if the contract were nondivisible. See Norrington v. Wright, 115 U. S. 188, 205, 6 S. Ct. 12, 29 L. Ed. 366. But this need not be decided, because, as we have held above, the contract for the sugar is divisible in respect to the installments. Under such circumstances, the power of rescission exists as to each installment. See Rubin v. Sturtevant, supra, page 932, and A. K. Young & Conant Mfg. Co. v. Wakefield, supra; the latter case expressly distinguishing Mansfield v. Trigg, 113 Mass. 350, so strongly relied upon in argument.

The contract was made in New York, and is to be decided according to the law of that state. See Scriven v. Hecht, 287 F. 853, 857 (C. C. A. 2). While no absolutely controlling decision has been found, and the question is not free from difficulty, we think that the implications of the Portfolio decision justify the conclusion that the contract was divisible in respect to the installments, that acceptance of the first installment did not preclude rejection of the second proven defective, and that the plaintiff, having paid therefor without knowledge of the defect and having promptly rejected the defective sugar upon its arrival in Chicago, may recover the payment, and is

not confined to a remedy on the contract for breach of warranty.

The judgment is therefore affirmed, with costs.