## In re MARSHALL'S GARAGE, Inc.

## FIRST NAT. BANK OF NORTH BENNINGTON v. SURDAM.

### No. 177.

Circuit Court of Appeals, Second Circuit.
March 13, 1933.

Fenton, Wing, Morse & Jeffords, of Rutland, Vt., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Marshall's Garage, Inc., a corporation, was adjudicated an involuntary bankrupt on January 4, 1930. One month later the appellee, Amy L. Surdam, filed proof of claim as a creditor. In September, 1930, she filed an amended proof of claim, pursuant to leave granted by the referee in bankruptcy. To the amended proof of claim First National Bank of North Bennington, a creditor, filed objections. The district court allowed the claim in the sum of $47,286.26, and, the trustee in bankruptcy having declined to appeal, the bank was permitted to appeal from the order of allowance.

The claim as allowed is composed of two items: One of $5,186.26, being for rent accrued to the date of adjudication; the other of $42,100, being for damages for breach of contract to purchase the leased premises. The latter figure was arrived at by deducting from the contract price of $92,100 the fair market value of the property in January, 1930, which was found to be $50,000. The appellant has not challenged the allowance of the item for past-due rent. Its argument attacks only the allowance of $42,-100 for breach of the contract to purchase, contending (1) that the agreement, properly construed, gave the lessee only an option; (2) that, if it were a contract, the claim for breach was not provable; (3) that, even if it were provable, the damages were incorrectly measured; and (4) that there was error in allowing the amended proof to be filed more than six months after the adjudication, contrary to section 57n of the Bankruptcy Act as amended (44 Stat. 666, 11 USCA § 93 (n).

By an agreement in writing, the appellee leased to the bankrupt for a term of ten years from October 9, 1926, at a monthly rental of $610 the premises upon which it conducted its garage business. The agreement also contained provisions by which the lessee agreed to purchase and the lessor agreed to sell the property during the term of the lease for the sum of $92,100. This was to be paid in installments of not less than $1,000 a year during the continuance of the lease, with a provision that at least $10,000 should be paid during the first five years and a like sum during the second five years; and

Marvelle C. Webber, of Rutland, Vt., and Samuel H. Blackmer, of Bennington, Vt., for appellant.

the lessee was then to give a one-year note for the balance of the purchase price secured by a mortgage upon the property. Other clauses gave the lessee the option to pay in full and obtain a warranty deed from the lessor at any time during the continuance of the lease, if not in default in respect to rent or other obligations, and to pay $1,000 on account on the 9th day of any month and thereby obtain a reduction in subsequent monthly rental equal to interest at the rate of 8 per cent. per annum on the amount of such payment. The lessor reserved a right of re-entry for the lessee's failure to perform "any of the stipulations of this agreement on its part to be done." The agreement also provided that, if the lessee's note and mortgage were given and not paid, the lessor should, in certain conditions, foreclose by private sale, accounting to the lessee for any surplus after retaining expenses of the sale, unpaid interest, and any balance due on the purchase price. When the petition in bankruptcy was filed, nothing whatever had been paid on the purchase price, and there were overdue installments of rent. The trustee in bankruptcy elected not to assume the agreement, and gave up possession to the lessor on February 8, 1930.

The contention that the agreement granted only an option to purchase cannot be successfully maintained. In positive terms a contract to buy and sell was stated. It was "mutually agreed" that the lessee "shall purchase from said lessor" and the lessor "shall sell to said lessee, * * * the above described real estate for the sum of ninety two thousand one hundred dollars during the term hereof." Then follow provisions that the lessee "shall pay" to the lessor, "on said principal sum," not less than $1,000 a year, with a minimum of $10,000 during each five years, and shall then execute a note and mortgage for the balance of the purchase price. The lessor's obligation to deliver a deed to the lessee contemporaneously with the lessee's delivery of the mortgage is clearly implied, if not expressly covered, by the earlier option clause permitting the lessee to pay in full at any time during the term and binding the lessor to give her deed upon receipt of the sum of $92,100. These definite promissory stipulations are not nullified by the subsequent paragraph upon which the appellant so strongly relies as evidencing the parties' intention to consider the instrument as granting only an option. This paragraph reads as follows:

"In case of dispute or ambiguity this contract shall be construed in the light of the following; that the property leased has cost the lessor ninety two thousand one hundred dollars, that she is willing the lessee may purchase the same at cost during the next eleven years and that in the meantime the property shall be fully protected and that she shall receive the rent herein reserved."

The purpose of inserting it was apparently to aid construction of the preceding lengthy and somewhat technical provisions. It states the cost of the property, and thus provides an explanation of the amount of the annual rent, which was almost exactly 8 per cent. on the lessor's investment in the property, and throws light on the provision reducing the monthly rent by 8 per cent. interest on any payment on the purchase price. It carries over into the eleventh year, when the note and mortgage were expected to be outstanding, the lessee's option to accelerate payment of the balance of the purchase price represented by said note, and in this respect helps to explain the earlier ambiguous clause that "the rights of sale and purchase as herein specified, shall extend for the year covered by said mortgage, provided the mortgage is given as herein specified." But, whatever the purpose of this explanatory paragraph, it is not enough to contradict the definite promises of the lessee to buy and of the lessor to sell on the terms previously stated. Thus the agreement at bar differs radically from that construed as an option in McHenry v. Mitchell, 219 Pa. 297, 68 A. 729, 730, where it was expressly stipulated that failure of the purchaser to pay should avoid the agreement and release both parties "from all liability hereunder."

Nor can the argument prevail that the failure of the lessor to sue for the unpaid annual installments shows that the parties by their conduct interpreted the agreement as merely an option. Failure to sue cannot be construed as an admission of no cause of action. The vendor is not obliged to treat nonpayment of an installment of the purchase price as a total breach of the contract, even if he might so treat it; nor need he sue promptly for an overdue installment, save to avoid the bar of a statute of limitations.

Granting the existence of a contract of purchase and sale, the next question is whether the appellee has a provable claim for breach of contract. She relies upon the doctrine enunciated in Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct.

762

412, 60 L. Ed. 811, L. R. A. 1917B, 580, that bankruptcy is an anticipatory breach of an executory contract and creates a provable claim for damages, if the trustee in bankruptcy elects not to assume performance. The doctrine is applicable to a contract for the purchase of land, no less than to other executory contracts. See In re Beverlyridge Co., 35 F.(2d) 818, 820 (C. C. A. 9); Burns Mortg. Co. v. Bond Realty Corp., 47 F.(2d) 985, 987 (C. C. A. 5). But as pointed out in Mr. Justice Pitney's opinion in the Chicago Auditorium Case, at page 590 of 240 U. S., 36 S. Ct. 412, 414, and as many lower federal decisions have held, the doctrine does not apply to future installments of rent to accrue under a lease. In re Roth & Appel, 181 F. 667, 31 L. R. A. (N. S.) 270 (C. C. A. 2); Watson v. Merrill, 136 F. 359, 69 L. R. A. 719 (C. C. A. 8); Colman Co. v. Withoft, 195 F. 250 (C. C. A. 9). Future rent is a claim contingent on continued possession of the leased premises, and so not provable in bankruptcy. The appellant contends that the lessee's promise to pay rent and promise to purchase the premises "during the term" of the lease constitute a single and indivisible contract, and that the claimant's right to installments of the purchase price payable in the future was as contingent on continuance of the lease as was her right to future rent, and hence no more provable in bankruptcy. It is true that the lessor's duty to convey title is conditional on the lessee's payment of rent and performance of its other obligations as lessee as well as on its payment of the purchase price. In this aspect the contract may be said to be single and indivisible. But this does not advance the argument. A contract may be "indivisible" in certain aspects or for certain purposes, although "divisible" in other aspects or for other purposes. See Czarnikow-Rionda Co. v. West Market Grocery Co., 21 F.(2d) 309, 312 (C. C. A. 2); Am. L. Inst. Contracts, § 349, illustration 5; 37 Yale L. J. 634. From the standpoint of the lessor vendor, we think the promises of the lessee to pay rent and to purchase were divisible. The rent was payable in definite amounts and at definite times in exchange for use and occupation of the premises; the purchase price was likewise payable in definite amounts and at definite times as consideration for conveyance of the title. The several performances to be rendered by the lessee vendee were apportioned to the several performances to be rendered by the lessor vendor. Bankruptcy was an anticipatory repudiation of the promise to purchase. This

was a total breach of the contract because payment of the purchase price was so material a part of the contract. It immediately created a right to damages. Because one element of such damages, the loss of future rents, is not provable in bankruptcy under the established rule of law, does it follow that no damages are provable? We think not. The lessee's promises to pay rent and to pay the purchase price should, for reasons already stated, be deemed separable. Cf. Trust Co. v. Whitehall Holding Co., 53 F. (2d) 635 (C. C. A. 5); In re Barton, 34 F. (2d) 517 (D. C. N. H.).

It is further argued that by re-entry the lessor terminated the lease and thereby extinguished not only her right to future rent, but also her right to the purchase price. But the lessor's exercise of a right of re-entry (assuming acceptance of possession from the trustee to be equivalent to a re-entry) does not discharge any right of action which has already accrued; it merely excuses the lessee from thereafter performing his promises. Hence, if the right to damages for an anticipatory repudiation of the promise to purchase accrued before the lessor re-entered, the re-entry did not affect it any more than it did the right to past-due rent. Under the doctrine of the Chicago Auditorium Case, bankruptcy operates as an anticipatory breach as of the date of the filing of the bankruptcy petition. The District Court was right in holding the claim for damages provable.

But we cannot approve the way the damages were measured. The fact that an anticipatory repudiation is a breach of contract does not cause the repudiated promise to be treated as if it were a promise to render performance at the date of the repudiation. Callan v. Andrews, 48 F.(2d) 118, 120 (C. C. A. 2), and cases there cited; Am. L. Inst. Contracts, § 338. In the Contracts Restatement, last cited, it is explained (pages 548, 549) that the rules for determining the damages recoverable for an anticipatory breach are the same as in the case of a breach at the time fixed for performance, and if trial is reached before the time fixed for performance, then the value of the promised performance and the extent of the future harm must be reached by prediction. In the case at bar the damages which the lessor vendor would suffer from nonperformance by the lessee vendee at the appointed time is the difference between the market value of her land on October 9, 1936 (when she had contracted

to convey it, but would retain it), and the purchase price she was to receive under the contract. The market value of the land was proved as of January, 1930, and, unless this may be assumed to represent its value in 1936, there is no method of forecasting its future value. We accept its 1930 value as the best prediction possible at the time of trial. But to deduct this value, $50,000, from the total purchase price of $92,100, and forthwith pay the difference, $42,100, would give the lessor vendor more than she would have gotten had the contract been carried out. She would get $92,100 of land and money at once, although under the contract she was to be paid in the future. The present value of $42,100 must be found as of the date of the filing of the petition in bankruptcy, which sets the line of cleavage for provable debts. The record itself does not disclose the date the petition was filed, but the appellee's brief states that it was August 15, 1929. While it is true that $20,000 of the purchase price was to be paid in installments prior to October 9, 1936, the lessor vendor was to derive no advantage from such earlier payments because interest on them was to be figured in reduction of the rental. Accordingly, she would have been made whole had she received the land and the present value of $42,100, on August 15, 1929. The present value of said sum on that date, calculated at 6 per cent. simple interest, we figure to be $29,460.34.

It remains to consider the contention that the amended claim was filed too late. Courts of bankruptcy are most liberal in allowing amendments to make formal proof of a claim based on facts which have been brought to the attention of the trustee within the statutory period. In re Kessler, 184 F. 51 (C. C. A. 2); In re Miller (D. C.) 45 F.(2d) 909, and cases there cited. In the case at bar, the original proof of claim sought to prove "annual payments due and to become due to apply on the purchase price, as per contract." It did not, it is true, expressly assert that bankruptcy was an anticipatory breach of the contract to purchase, as does the amended proof of claim, but on no other theory could it claim recovery of the installments not yet due. It brought to the trustee's attention the bankrupt's contract to purchase the land and the fact that the claimant was seeking a recovery under that contract. The amendment does the same, but corrects the formal omission to allege a breach and states the claim for damages more accurately. We agree with the District Court that the amendment was properly allowed.

Although the appellant's brief asserts no error in the allowance of the item for rent, a mistake is apparent of a character which we cannot overlook. The overdue installments of rent, and interest thereon, were allowed up to the date of adjudication, January 4, 1930. This was wrong. The date of cleavage is the filing of the petition. No debt not then provable can be allowed. The error, though not argued, is covered by the third assignment, which challenges allowance of the claim in the amount of $47,286.26. Accordingly, we restate the item for rent as follows:

| | |
|---|---|
| Installments due on August 15, 1929 | $4,880.00 |
| Interest thereon to same date | 90.28 |
| | $4,970.28 |
| Less payments prior to August 15, 1929 ... $999.00 | |
| Interest thereon to same date ...... 5.43 | |
| | 1,004.43 |
| Claims for overdue rent | $3,965.85 |

This makes the entire claim $33,426.19. The order is modified by allowing the claim in this amount. The appellant is entitled to costs of this appeal.