GREEFF ENGINEERING AND MANUFACTURING COMPANY,
Respondent, *v.* SCOURENE MANUFACTURING COMPANY,
Appellant.

First Department, March 8, 1918.

**Trial — direction of verdict on plaintiff's motion — when recovery
sustained — contract — sale — acceptance — performance — evi-
dence — question of fact.**

Where a verdict is directed on plaintiff's motion, without defendant having
by like motion submitted the facts to the court, a recovery cannot be
sustained unless the evidence with respect to every question of fact upon
which plaintiff's right to recover depends is uncontroverted.

In an action on contract to recover an amount which the defendant agreed
to pay the plaintiff for installing on its premises an apparatus with a
guaranteed capacity for drying scourene, a soap manufactured by it,
it appeared that the results of the apparatus furnished were not satis-
factory, and that after several trials thereof, and changes therein made
by the plaintiff, the defendant demanded its removal. Evidence examined,
and

*Held,* that the question whether or not the plaintiff performed its contract
was one of fact for the jury, and that the court erred in holding that
there was an acceptance by the defendant as matter of law.

The fact that the defendant used the dryer after the commencement of
the action cannot aid the plaintiff, at least on the question of acceptance.

When a witness gives two versions of a transaction it is for the jury and
not for the court to determine the truth.

The defendant had a right to use the dryer for a reasonable time after the
last alterations by the plaintiff to determine whether or not it would do
the work according to the guaranty.

APPEAL by the defendant, the Scourene Manufacturing
Company, from a judgment of the Supreme Court in favor of
the plaintiff, entered in the office of the clerk of the county of
New York on the 27th day of June, 1917, upon the verdict of
a jury rendered by direction of the court, and also from an
order entered in said clerk's office on the same day, denying
defendant's motion for a new trial made upon the minutes.

*Henry H. Harkavy* of counsel [*Jacob Landy* with him on the
brief; *Lorence & Harkavy*, attorneys], for the appellant.

*I. Maurice Wormser* of counsel [*Eugene L. Bondy* with him
on the brief], for the respondent.

LAUGHLIN, J.:

The verdict was directed on plaintiff's motion without defendant having by like motion submitted the facts to the court; and, therefore, unless the evidence with respect to every question of fact upon which plaintiff's right to recover depended was uncontroverted the recovery cannot be sustained.

This is an action on contract to recover the sum of $2,500 which defendant agreed to pay plaintiff for installing on its premises an apparatus with a guaranteed capacity for drying scourene, a soap manufactured by defendant in cakes weighing about eleven and one-half ounces which it becomes necessary to dry by removing about two ounces of moisture in order to render it marketable. The method formerly used by defendant took about three weeks to dry 60,000 cakes and consisted in allowing heated air to pass up through open trays or racks on which the cakes of scourene were spread. The plaintiff was engaged, among other things, in installing appliances for removing moisture by currents of air. It is to be inferred that it had no particular or standard appliances or equipment and that it contracted for such alterations in buildings and the installation therein of such appliances and equipment as it deemed necessary to accomplish the desired result in each case by the application of the natural principle of having the moisture absorbed and removed by air blown against and around the objects from which the moisture was to be extracted. It had had no experience in endeavoring to remove moisture from any kind of soap. The latter part of November, 1913, the plaintiff's sales manager opened negotiations with the general manager of defendant with a view to obtaining a contract for installing a drying equipment in its plant and expressed the opinion that plaintiff could install an equipment that would in thirty hours dry what it was taking three weeks to dry by the defendant's system. Scourene would not dry rapidly in a temperature under 100 degrees Fahrenheit and would melt at a temperature 20 degrees higher and even less; and plaintiff was aware that it was necessary to maintain a uniform temperature a little below 110 degrees and that about two ounces of moisture was to be extracted from each cake. The plaintiff experimented with a few cakes in its

laboratory by placing them in an inclosure about the size of a telephone booth and forcing air against and around them. After the tests it wrote defendant as follows: " Supplementing the writer's conversation with you a few days ago regarding the tests we ran on your scourene, powder, soap, etc., I trust you have had time to go over these results. We think the best way of handling this matter would be to take the four lower rooms on the first floor and equip them with our drying system, so that three of the rooms would be drying all the time, while the fourth one was being charged or ' pulled.' In other words, we would guarantee this equipment to dry three days' work, or approximately 60,000 cakes of Scourene in thirty hours. As you would ' pull ' one of the four kilns every day, it would mean that you would have a definite output properly dried — about 20,000 cakes of Scourene per ten hours. To do this we would install an equipment that would handle in the neighborhood of 6,000 cubic feet of air per minute, which would be sufficient to dry your Scourene in 30 hours. The price of this equipment would be Twenty-five hundred Dollars ($2500), furnished, delivered and erected. You would be required to furnish steam, water, drain and electric connections to the apparatus, and a couple of unskilled men to assist our erecting engineer on the installing work.

" We would be very glad to send you a blue print of just what this layout would cover if you are ready to take up the matter."

Defendant asked for the blue print and it was sent and returned approved, and on January 29, 1914, defendant formally accepted plaintiff's proposition with a provision for a discount of five per cent for cash payment twenty days " after acceptance," and stated that it would " at once proceed to put the rooms in condition." Plaintiff replied the next day thanking defendant for the order and accepting the terms *as modified* and suggesting that the partitions be removed leaving the kiln one large room instead of as then four small ones. This suggestion was complied with and plaintiff proceeded to install the drying equipment consisting of a fan or blower operated by an electric motor to draw the air through the wall of the building into the drying room and heaters to

heat it to a temperature of about 110 degrees and a duct along the ceiling and lateral ducts to convey the air to and down one of the side walls where it was to be discharged at a point eighteen inches above the floor directly against the floor, and a thermostat to maintain an even temperature. This system first installed was based on the principle of cross-circulation. The tendency of the hot air discharged against the floor would be to rise and it was designed to have it rise through racks or trays containing the scourene and as the moisture cooled the air it would fall and be drawn out through vents on the opposite side of the room. When put in operation the results were not satisfactory. Evidence was given on the part of the plaintiff tending to show that this was owing to the fact that the thermostat needed cleaning and that the skids on which the trays rested were so placed that they deflected the air and it passed over instead of through the trays and that there were too many cakes on a tray; but evidence given on the part of the defendant tended to show that plaintiff was informed in advance just how the trays were to be arranged in the drying room and the number of cakes on a tray and that the trays and skids were the same as theretofore used by defendant. It also appeared on the plaintiff's case that the angle of the skids and trays to the hot air could not be conveniently changed by defendant and on the part of defendant the evidence tends to show that it was not requested to locate the skids and trays differently. The thermostat was furnished by plaintiff as part of the equipment. The evidence shows that it did not work properly but whether this was owing to the fact that it needed cleaning or to some defect is not entirely clear. The plaintiff attempted to improve conditions by putting on elbows at the mouth of each duct to deflect the air against the scourene. About this time and on March 31, 1914, plaintiff submitted a bill for the contract price and providing for a discount of five per cent if paid on or before April twentieth. This was returned by defendant as not in accordance with the contract and attention was drawn to its letter accepting plaintiff's proposal. The learned trial court erroneously construed this letter as an acceptance of the equipment because the defendant did not refer to the guaranty or deny that it had accepted. The plaintiff, however,

did not so construe it for it made no further demand and recognizing that the equipment did not comply with the guaranty it voluntarily offered to change the system very materially and obtained the defendant's consent to do so and to an extension of its time to comply with its guaranty until May 1, 1915, and in its complaint only claims that the contract price became due on the last named date. Moreover, only eight days before rendering the bill, plaintiff in writing defendant for leave to show the equipment to a third party said: " I fully appreciate the fact that this system has not run long enough for us to get any definite idea as to its actual efficiency, but what I want to do is to show Mr. Delgarno the mechanical layout — the arrangement of fans, distributing ducts, motors, etc." In May, 1914, plaintiff, evidently at its own expense, commenced changing the system into what is designated a tunnel system. It lowered the ceiling and narrowed the long room which had formerly constituted four rooms. The defendant did not operate the plant during the summer and shut down in May until September or October. The plaintiff continued the work of changing the plant in the fall and added to its original plans by constructing deflectors known as baffle boards along the ceiling to throw the hot air down and by finally in April, 1915, putting in four radiators extending across the room as it was found that the air which was pumped in at one end of the room and there heated to the proper temperature and was designed to pass out at the other end of the room would be cooled by the moisture from the scourene and was only effective in drying the scourene near the end where it first came in contact with the scourene. The last work in installing the radiators was finished about the end of April, 1915. On June 2, 1915, defendant wrote plaintiff that the equipment did not dry the product as guaranteed and that its patience was exhausted and demanded that the dryer be removed at once. It would seem from that letter and other evidence that there had been some complaint made by defendant after the last work performed by plaintiff. Plaintiff replied June eighth, claiming in substance that the dryer would do the work if properly operated and asking that it *be accepted* and that payment therefor be made. To this defendant replied asserting that the dryer did not fulfill the guaranty and

demanding its removal. Plaintiff replied June tenth demanding payment and on July first brought this action. There is evidence on the part of the plaintiff tending to show that after the last work performed by it the dryer was capable if properly run of fulfilling the guaranty; but there is other evidence given on the part of the defendant to the effect not only that it did not but that it could not fulfill the guaranty. Much is sought to be made by counsel for respondent of the fact that the defendant used the dryer as late as December, 1915. That, however, was long after the action, which is one at law, was brought and cannot aid the plaintiff, at least not on the question of acceptance. But that was merely a test of three days evidently made by arrangement between the parties with a view to a settlement or to obtaining evidence for use on the trial for a representative of the plaintiff was present throughout the test. It needs no citation of authorities or extended argument on these facts to show that the question as to whether the plaintiff performed its contract was one of fact for the jury. It is contended, however, that the defendant accepted the dryer by using it with knowledge that it did not fulfill the guaranty and that, therefore, it must pay the purchase price and may only counterclaim its damages. It pleaded a counterclaim for damages but withdrew it on the trial. The defendant's general manager testified on cross-examination that the defendant used the dryer from the time it was installed until it notified plaintiff to take it out; but he modified that on redirect examination and testified that it only used the dryer during the time the plaintiff was making the several installations. That may be improbable; but it is controverted by no other witness or fact and it is for the jury and not the court to determine the truth when a witness gives two versions of a transaction. (*Ochs* v. *Woods*, 221 N. Y. 335; *Hall* v. *Allemannia Fire Ins. Co.*, 175 App. Div. 289; *Townsend* v. *Hirshkind, No. 1*, 176 id. 120.) But defendant had a right to use the dryer for a reasonable time after the last alterations to determine whether or not it would do the work according to the guaranty. (*Wegner Machine Co.* v. *Taylor*, 143 App. Div. 704.) The authorities principally relied on by respondent (*Brown* v. *Foster*, 108 N. Y. 387, and *Silberstein* v. *Blum*, 167 App. Div. 660) are plainly distinguishable on the facts.

The court, therefore, erred in holding that there was an acceptance as matter of law.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, PAGE and SHEARN, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.