THE LIQUID CARBONIC CORPORATION, Plaintiff, *v.* NICHOLAS J. CAROOMBAS, Defendant.

Supreme Court, Tompkins County, September 1, 1928.

Sales — rescission — conditional sale of soda fountain fixtures — rescission was not made within reasonable time after discovery of alleged breach of warranty — error to submit question of rescission to jury — verdict in favor of defendant is set aside.

The defendant purchased soda fountain fixtures on a conditional sale contract and made an initial payment thereon and one subsequent monthly payment. In this action to recover the balance due on the purchase price the defendant has pleaded rescission and has set up a counterclaim for the amount he paid on the contract.    The jury returned a verdict in favor of the defendant.    The evidence shows that the machinery did not operate properly from the start, and that the plaintiff sent service men to the defendant's place of business to adjust it, but a short time after the defendant asked for an extension of time of payment without making any complaint in reference to the equipment. About three months after the equipment was installed the plaintiff wrote the defendant that the trouble he was experiencing with the equipment was apparently due to tampering by defendant's employees, but it was not until nearly seven months after the equipment was installed that the defendant first intimated his desire to rescind the contract and even then he did not make an absolute rescission thereof.

Applying the rule of law that a person who wishes to avail himself of the remedy of rescission must act promptly as soon as it is apparent that the goods do not fulfill the warranty, it is evident that the defendant did not have the right to rescind nearly seven months after the installation of the equipment, since he had discovered the alleged breach of warranty within a short time after the equipment was installed and continued to use the equipment while making complaints as to the manner in which it worked.    It was error to submit the question of rescission to the jury.

The defendant was not dissuaded from a prompt rescission of the contract by promises made by the plaintiff, for the early correspondence indicates that the defendant was satisfied with the equipment and only became dissatisfied when

the plaintiff pressed him for payment, and furthermore, when the plaintiff informed the defendant that it believed he was finding fault solely to avoid payment, it was then the duty of the defendant promptly to rescind the contract if he so desired and his failure to act at that time lost him the right to rescind thereafter.

The verdict of the jury, therefore, is set aside and a new trial is granted.

MOTION by plaintiff to set aside verdict of $743 rendered in favor of defendant on a counterclaim.

*McCole & Reid,* for the plaintiff.

*Stagg & Heath,* for the defendant.

SENN, J. This action was brought by the plaintiff to recover of the defendant the sum of $1,857 and interest, balance on the purchase price of a soda fountain, carbonator, frigidaire system and accessories, sold to defendant to be used in his soda water and ice cream parlors at Groton, N. Y. The carbonator was a machine for charging the soda water and the frigidaire was a system for keeping the ice cream and sodas at a satisfactory temperature.

Defendant counterclaimed for damages by reason of alleged breach of warranty; also charging a rescission by the defendant of the contract of sale and demanding affirmative judgment for the amount paid on the purchase price. On the trial the defendant gave no evidence as to the amount of his damages and rested his case on the claim of rescission. The verdict of the jury awarded him the sum of $743, which he had concededly paid.

The original written order, a conditional sales agreement, was accepted by plaintiff on December 14, 1925, and the installation was made April 3 to 7, 1926.

The contract called for a total payment of $2,600, $662 of which was paid in advance and the remainder was to be in monthly payments of $81 each. Only one monthly payment, that due on May 1, 1926, has been made. Soon after the equipment was installed there was some complaint that it did not function properly and the plaintiff had sent its service man a number of times to make adjustments and corrections. It is claimed for the defendant that the machine never operated satisfactorily, principally that the correct temperature was not maintained, resulting in the spoiling of ices, creams, fruits and fruit juices and that the trouble was due either to inherent defects in the machine or to faulty service on the part of the service man, while on plaintiff's part the trouble was claimed to be due to failure of defendant to follow instructions of the service man, especially in tampering with the adjustments.

On June 1, 1926, when a payment was due, defendant wrote to

plaintiff that the Corona Typewriter factory, the whole support of the town, had practically shut down until September fifteenth; that he would not be able to pay his notes for two or three months, and asking if they could be extended if he would pay interest. In this letter no fault was found with the equipment. Plaintiff replied by letter of June ninth, offering to accept half payment of the installments if defendant would pay his open account for goods of $136.48. On July twenty-third, plaintiff again wrote defendant calling his attention that he had not made satisfactory arrangements of payment. Reference is made to plaintiff's letter of July sixth (not in evidence) saying: " we notice that you are still complaining about the equipment. We have sent our service man several times to attend to those complaints and his reports indicate there is nothing the matter with the equipment and that either you or some one in your employment has been tampering with it, etc. Under these circumstances you can not expect satisfactory results, nor can you expect us to be continually sending our service man to adjust the equipment, unless you pay his expense."

On July 27, 1926, defendant replied that " it is impossible for me to pay you so long as the equipment does not give perfect service. As soon as you will make the proper adjustments you will receive your pay." Then followed an enumeration of defects and points wherein the equipment did not function properly and a denial that he or his help had tampered with it in any way. He also said: " I must warn you also and give you notice, if anything breaks and causes damages I will hold you responsible." To this letter plaintiff replied on July twenty-ninth, among other things, saying: " It appears to us that you are putting forward these complaints merely as an excuse for delaying payment on the account " and refusing to do anything further in regard to the complaints until defendant paid the June and July installments as evidence of his good faith.

On October 12, 1926, defendant again wrote complaining that although Mr. Glass (plaintiff's service man) and Mr. Shay (the salesman who sold the equipment) had been there looking up the soda fountain, they gave no satisfaction. Then follows an enumeration of complaints as to the equipment and the statement that " you must put the outfit in a first class order as I am disgusted the way things are working. * * * I will hold you responsible for all expenses up to this time and in the future until you put the outfit in working order."

On October nineteenth plaintiff again wrote insisting (on Mr. Shay's report) that there was absolutely nothing the matter with the soda fountain and that defendant had been withholding pay-

ment without justification and strongly insisting on the payment of the installments due, then amounting to $405. In reply to this, under date of October 25, 1926, defendant writes stating that Mr. Glass had been there working on the machine for two days but had not improved it. In this letter is the first definite notice or attempt at rescission, viz.: " When you replace this machine or get the same to working properly, I will pay you the installments. If you can not fix this machine I will have to ask that you take the same out and refund to me the money I have already paid out."

On December 20, 1926, defendant again wrote enumerating still more trouble with the equipment and saying: " If you attend to this at once and put in complete order, alright, but if not I will have to take it out and put in storage and buy a new one." The next letter in evidence is dated February 1, 1927. It was evidently written after the defendant's attorney had taken the matter up with L. M. Taylor, assistant manager of plaintiff's New York office. In this letter Mr. Taylor promises to have made various adjustments, as per conversation with defendant's attorney, to take care of and correct the matters complained of, after which defendant is to pay the balance due on his account. On May 6, 1927, there is a letter from plaintiff's New York office to the effect that a new marble counter was being shipped to take the place of the original one which was defective and pitted. Also that a man would " go over the frigidaire unit and get the temperatures down to normal, as mentioned by our Mr. Taylor in his various letters to you on the subject."

The new marble counter was never received and, as far as appears, nothing ever came of the proposals contained in Mr. Taylor's letter or letters. There was more correspondence, but no settlement was reached.

It is claimed on the part of the plaintiff that the defendant was not entitled to go to the jury on the question of rescission; that he did not within a reasonable time after he knew of the breach of warranty claimed by him, notify the plaintiff of his election to rescind; that he accepted the equipment within the meaning of section 129 of the Personal Property Law, in that, after knowledge of the breach of warranty claimed, he retained the goods without intimating to the seller that he had rejected them.

The only express warranty in the contract was that the cabinet would keep cream in right condition. However, in this case there was an implied warranty that the goods were reasonably fit for the defendant's purposes. (Pers. Prop. Law, § 96, subd. 1, as added by Laws of 1911, chap. 571.)

Supreme Court, September, 1928.    [Vol. 132

For the purposes of the motion I must assume that the jury found the facts most favorable to the defendant under the proofs and accordingly they may have found that the equipment was wholly unfit. The only question is, did the evidence justify the submission of the question as to whether the defendant rescinded the contract of sale within the meaning of section 150 of the Personal Property Law (as added by Laws of 1911, chap. 571).

The proposition may, and often does, present a mixed question of law and of fact. Seldom, if ever, are two cases exactly alike.

It is well settled that where the purchaser seeks to rescind, he must act promptly within a reasonable time after discovery of the breach of warranty and either return, or offer to return, the goods to the seller. He cannot ordinarily, after an offer to return, keep and continue to use the goods, even though he continues to make complaint. (*Logan* v. *Berkshire Apartment House,* 3 Misc. 296; *Hospital Supply Co.* v. *O'Neill,* 10 id. 655; *Gordon Dryer Co.* v. *Staier Chemical Co.,* 191 N. Y. Supp. 201; *Petersen Oven Co.* v. *Guarino,* 221 App. Div. 146.)

The failure to return the article cannot be excused on the ground that it is a fixture attached to the building, where it appears that there is nothing to prevent its removal, if unsatisfactory. (*Logan* v. *Berkshire Apartment House, supra.*)

Where purchaser urged objections to the machine, but continued its use from November first to January fifteenth, held, that the retention and use after the discovery of the defects, imposed a liability to pay for the article. (*Hospital Supply Co.* v. *O'Neill, supra.*)

In *Gordon Dryer Co.* v. *Staier Chemical Co.* (*supra*) there was a sale in July of a drying machine. Defendant complained that it was not working properly. After several unsuccessful attempts by the plaintiff to correct the defects, defendant in September notified the plaintiffs that they could take out the machine. Defendant did not thereafter discontinue the use of the dryer. Held, that it could only counterclaim for damages.

In *Miller* v. *Zander, Nos. 1 & 2* (85 Misc. 499; affd., 166 App. Div. 969) an automobile was sold guaranteed fully for one year. Within the year the frame broke, the radiator leaked and the brakes did not work properly. Plaintiffs undertook to repair the car, but defendant became dissatisfied, offered to return the car and refused to make further payments on the purchase price. There was also an agreement by the vendor to keep the car in repair for a year, but the court held that in order to rescind the sale the defendant must establish a breach of warranty, not merely breach of contract to keep the car in repair; that the guaranty that the automobile

will be free from defects for a year carries with it necessarily the warranty that the automobile at the time of the sale is of sufficiently good workmanship and materials to run for a year under ordinary and proper use without manifesting defects. Therefore, if defendant wished to rescind, he should have attempted to do so when he discovered the defects. Instead, he demanded that the car be made right and allowed plaintiffs to make repairs, evidently relying on the contract to keep in repair rather than on the breach of warranty. The court said: "If, knowing that the car was not what he had a right to expect, he still retained it, he is precluded from asserting a right to withdraw from the transaction altogether [rescission], although he is not deprived of his damages."

Held, that as the defendant relied on the defense of rescission alone, the court below was justified in dismissing the complaint.

From the foregoing and many other authorities it appears well settled that a purchaser who wishes to avail himself of the remedy of rescission must act promptly as soon as it is apparent to him that the goods do not fulfill the warranty. He cannot play fast and loose, leaving it an open or doubtful question as to whether he intends to retain them. He must either return them or offer to do so in such explicit and positive terms as to amount in law to a return. This the defendant did not do but retained and used the equipment long after he knew of the defects complained of.

But it is insisted by the defendant's attorney that the time when it might otherwise have been necessary for him to elect to rescind was held in abeyance, or postponed, by the acts, promises and assurances of the plaintiff which lured him on and quieted his suspicions that the equipment was not as it should be; that in the nature of things the defendant, who was ignorant of the construction and technical details of the mechanism, must have and did rely largely on the skill and knowledge of the plaintiff and its assurances that everything could and in time would be made right; that these promises and assurances, relied on by the defendant, now estop the plaintiff from saying that the notice of rescission came too late.

It is undoubtedly true that the right to rescind may be held in abeyance by mutual agreement or by the acts and assurances of the vendor. (*Schiffer* v. *Dietz*, 83 N. Y. 300, 312; *Joannes Brothers Co.* v. *Czarnikow-Rionda Co.*, 121 Misc. 474; affd., 209 App. Div. 868.)

To the same effect is the dictum in *Sturm* v. *Williams Oven Mfg. Co.* (201 App. Div. 113, 116), where an oven was built by the vendor for the vendee and proving unsatisfactory was rebuilt and after that was still unsuccessful in baking properly. But that was not

a case of rescission, but where the vendor alleged acceptance as a defense to the vendee's action for damages.

I do not think that this is a case where the defendant was dissuaded from a prompt rescission by promises. His letter of June 1, 1926, standing alone, would indicate that he was not dissatisfied with his purchase and only wanted more time. When the extension of time he asked was not granted, he wrote again, this time finding fault with the equipment. On July 29, 1926, plaintiff informs him that its service man had examined it and found it all right and expressing the belief that defendant was only finding fault to avoid payment. Then was the time, if not sooner, when it was imperative to take immediate action to rescind, if he intended to do so. Certainly plaintiff was not then lulling him into a sense of security by promises, when it informed him that it did not believe his claims to be made in good faith. Yet his first notice which could be construed as a rescission is dated October 25, 1926, and he continued to use the equipment after that. His right to rescind was, therefore, lost and was not resurrected by the promises contained in Mr. Taylor's letter of February 1, 1927, and subsequent thereto. Whatever there was about these letters was evidently written in the course of negotiations with the defendant's attorney in an effort to compromise and settle the differences between the parties and in my opinion did not restore the right to rescind, which had been lost.

*Wurlitzer Co.* v. *Pappas* (215 App. Div. 23) is in many respects similar to the case at bar. Plaintiff had sold to defendant a mechanical piano with a nickel-in-the-slot attachment for use in defendant's candy store. There was a warranty of fitness and agreement to keep in repair for a year. Between March 16, 1920, when the machine was delivered, and the middle or last of July there were seven or eight occasions when it failed to operate. On each occasion, at the request of the defendant, the plaintiff sent a man to remedy the trouble. There came an occasion when the piano again failed to work, and plaintiff, because none of the monthly payments had been made, omitted to send the repair man and began to press for payment. On July seventeenth and again on July twenty-third defendant wrote plaintiff that the piano was unsatisfactory and requested plaintiff to remove it. Plaintiff continued to press for payment. On August sixteenth defendant's attorney wrote plaintiff's attorney asking whether the matter could not be satisfactorily adjusted. "There followed during the rest of the year a correspondence in which defendant asked that the piano be replaced by a new one and in which plaintiff apparently expressed a willingness to do so, if the back installments were paid."

The court, among other things, said: " Even if the letters of July seventeenth and July twenty-third be taken as an act and notice of rescission, not waived by subsequent negotiations, we think they came too late. Whatever defect there was in the piano was apparent within two days of its delivery. Its retention and use during a period of four months was such acceptance as precludes the right to rescind."

While under some circumstances the question of acceptance or rescission is for the jury (*White* v. *Schweitzer*, 221 N. Y. 461; *Greeff Engineering, etc., Co.* v. *Scourene Mfg. Co.*, 182 App. Div. 311), still, in the instant case it appears affirmatively, on the defendant's own version, that there was no timely attempt at rescission and there was no question of fact for the jury on that proposition. The case is clearly distinguishable from *Greeff Engineering, etc., Co.* v. *Scourene Mfg. Co.* (*supra*), where, after the second installation of the drying equipment, the purchaser, after about a month's trial, notified the maker and vendor that it did not operate as guaranteed and demanding its removal. The court held that the purchaser had a right to use the dryer a reasonable time after the last alterations to determine whether or not it would do the work according to the guaranty and that by doing so it had not, as matter of law, accepted the dryer.

The motion to set aside the verdict of the jury and for a new trial is, therefore, granted, with ten dollars costs of this motion to the plaintiff to abide the event.

An order to that effect may be submitted.